FILED'10 JAN 13 09:00USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RODNEY D. MOORE,

       Petitioner,

    v.

JOE DECAMP,

       Respondent.

Civil No. 08-1087-MO

OPINION AND ORDER

Amy Baggio
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

      Attorney for Petitioner

John R. Kroger
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

      Attorneys for Respondent

///

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying convictions for Assault in the Second Degree and Assault in the Third Degree. For the reasons that follow, the Petition for Writ of Habeas Corpus (#3) is denied.

## BACKGROUND

Late on the night of May 8, 2003, petitioner and his co-defendant, Jamie Sarchi, assaulted Randell Burns outside of a Portland nightclub. The attack was caught on video tape, and showed that "people matching the descriptions of Mr. Sarchi and [petitioner] attacked the victim in the parking lot . . . kicking, punching him, and striking his head against the fender of the vehicle on the tape." Trial Transcript, p. 109. Burns suffered multiple facial fractures, a bruised retina, nerve damage, and required surgery to have two steel plates implanted in his face. Trial Transcript, pp. 124-125. Based upon his participation in the attack, on May 22, 2003, petitioner was indicted on charges of Assault in the Second Degree and Assault in the Third Degree. Respondent's Exhibit 102.

Jury selection took place in petitioner's case on August 13, 2003. One of the prospective jurors provided the following background information pursuant to the trial court's list of questions:

2 - OPINION AND ORDER

Mr. Sample:     My name is Philip Sample.  [D]eputy
                sheriff with the Clark County Sheriff's
                Office.  College educated.  I live in
                North Portland.  I live with my wife and
                two daughters.  She's a housewife.  Yes,
                I've been the victim of a crime.  Plenty
                of friends in law enforcement.  Never
                been on a jury before.  Have appeared in
                court in a professional capacity.

Voir Dire Transcript, pp. 19-20.

　　While addressing the jury panel, counsel for petitioner

inquired whether police officers are entitled to special

credibility.  When counsel directed this inquiry at Mr. Sample, the

following exchange took place:

Counsel:    Mr. Sample, you can obviously comment.

Sample:     Yes.

Counsel:    You're a sheriff's deputy at Clark County?

Sample:     Yes, I am.

Counsel:    And what -- in this county that's mostly
            corrections.  Is it -- are you a patrolman up
            there?

Sample:     I'm on patrol.

Counsel:    Okay, and how long have you had that job?

Sample:     For three years in custody, which is actually
            in corrections, and then three years on the
            road.

Counsel:    Okay.  Okay.  Well, I think that after six
            years of working in the sheriff's office, you
            have acquaintances or friends in that office?

Sample:     Throughout the entire country.

Counsel:    Okay.  And you socialize with other folks that
            are in the same line of work with you?

　　3 - OPINION AND ORDER

Sample:    Occasionally.

Counsel:   Okay, and does that -- I mean, I guess the
           question's obvious, but does that have an
           impact on you listening to another officer
           testify at a trial?

Sample:    Well, I would say this: I know that an
           officer's not going to lie under oath or
           jeopardize his own meal ticket to alter the
           truth, so --

Counsel:   Okay, and

Sample:    -- (Indiscernible).

Counsel:   --and you think that's true 100 percent of the
           time?

Sample:    Well, that's what I'd like to believe, yes.

*Id* at 33-35.

Counsel for petitioner did not exercise a peremptory challenge

with respect to this juror. As he explained in his affidavit which

the State introduced during petitioner's PCR trial:

> I did not use a peremptory challenge against the juror
> from the Clark County Sheriff's office because petitioner
> wanted that juror on the panel. I told petitioner to let
> me know if he had any strong feelings about any of the
> potential jurors.  I specifically asked petitioner
> whether he wanted the juror from the Clark County
> Sheriff's office on the jury because he was the only
> African American on the panel.  Petitioner told me that
> he wanted him on.

Respondent's Exhibit 117, p. 3.

The case proceeded to trial where the jury convicted

petitioner on all counts, and the trial court sentenced petitioner

to 70 months for Assault in the Second Degree, and a concurrent

4 - OPINION AND ORDER

13-month sentence for Assault in the Third Degree. Trial Transcript, pp. 278-79.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. *State v. Moore*, 195 Or. App. 415, 99 P.3d 1239, *rev. denied*, 337 Or. 657, 103 P.3d 640 (2004).

Petitioner next filed a petition for post-conviction relief ("PCR") in Malheur County where the Circuit Court denied relief on all of his claims. Respondent's Exhibit 120. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. *Moore v. Hill*, 215 Or. App. 500, 170 P.3d 8 (2007), *rev. denied*, 344 Or. 109, 178 P.3d 248 (2008).

Petitioner filed this federal habeas corpus action on September 17, 2008. Petitioner has withdrawn all of his claims except his claim that trial counsel was constitutionally ineffective when he failed to exercise a peremptory challenge as to Juror Sample during jury selection. Memo in Support (#26), p. 2. Respondent asks the court to deny relief on the Petition because the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

## DISCUSSION

### I.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in

a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

6 - OPINION AND ORDER

The PCR trial court's decision did not specifically discuss the ineffective assistance of counsel claim currently before this court.   When a state court reaches a decision on the merits of a claim but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).   In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.   *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  Ineffective Assistance of Counsel

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009).   First, petitioner must show that his lawyer's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

7 - OPINION AND ORDER

Second, petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. To establish prejudice in the context of jury selection, petitioner must show "that, as a result of trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased. *U.S. v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1995). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

Petitioner asserts that the Sample's voir dire statements demonstrate his bias in favor of the prosecution, and he faults counsel for not exercising a peremptory challenge. He further argues that the decision to allow Sample to remain on the jury did not constitute reasonable trial strategy because it was not counsel's decision at all. In this regard, petitioner alleges that counsel failed him when he abdicated his responsibility to make tactical decisions in the case.

Although petitioner takes issue with Sample's voir dire testimony on the basis of bias, the statements at issue are rather unremarkable. Sample simply testified what he found to be true in

8 - OPINION AND ORDER

his experience.    He believed that, as a general rule, police officers do not jeopardize their careers by falsifying evidence. He also stated that he *hoped* that was true in every single case. Sample's belief that officers generally act professionally, and the fact that he stated his hope that they always do, do not represent any bias on his part against petitioner.

While it would have been sound trial strategy for a defense attorney to use a peremptory challenge in such a situation,  there was another dynamic at work in this case.    Petitioner is of African-American descent, as was Sample.   Importantly, Sample was the  only  African-American  citizen  on  the  entire  panel. Respondent's Exhibit 117, p. 3.    Trial strategy could easily dictate that there is value to an African-American criminal defendant in having at least one African-American citizen seated on the jury.  This is especially true in a case such as this where the police officers' testimony was not critical to the case.  The third party witnesses described seeking petitioner strike the victim first,  and  testified  that  he  continued  to  strike  the  victim repeatedly.    Trial Transcript, pp. 38, 58-59, 84-85, 123.    The testimony  of  the  officers  revolved  principally  around  the statements of the witnesses and a video tape of the attack which was played to the jury.   *Id* at 105-119, 136-140.

Faced with two competing strategies, counsel consulted his client to determine if he had any feelings or preferences as to

9 - OPINION AND ORDER

this particular juror.   In this way, he comported with the
applicable ABA standard: "Strategic and tactical decisions should
be made by defense counsel after consultation with the client where
feasible and appropriate.  Such decisions include . . . what jurors
to accept or strike. . . ."  ABA Standards, Defense Function, Part
V, Control and Direction of Litigation, Standard 4-5.2 Control and
Direction of the Case.

Quintero-Barraza, cited supra, offers guidance on the issue of
ineffective assistance of counsel regarding jury selection.  In
Quintero-Barraza, a potential juror who was a criminal justice
student stated during voir dire that he believed "one is guilty
before proven innocent.  He also stated that it would be
'difficult' for him to be impartial."  78 F.3d at 1349.  Counsel
did not, however, strike the juror, instead expressing "his
admiration of [the juror's] truthfulness."  Id.  Counsel's decision
to accept this juror gave rise to a claim of ineffective assistance
of counsel.

The Ninth Circuit rejected the petitioner Quintero-Barraza's
claim of ineffective assistance of counsel on the basis that
counsel made a tactical decision to accept the juror.  In doing so,
it noted that under Strickland, "review of this tactical decision
must be highly deferential, and we must accord a strong presumption
of validity, regardless of whether we agree with it."  Id (internal
citations omitted).  It also noted that courts "must pay due

10 - OPINION AND ORDER

respect for the oath taken by [the juror] given the absence of any stated intention to disregard it." *Id* at 1350.

In the case at bar, Sample's statements did not show bias, and unlike *Quintero-Barraza*, he never stated any intention to be anything other than impartial or to consider petitioner guilty until he proved his innocence. In this way, petitioner's case is not as strong as *Quitero-Barraza*.[1] Moreover, there is no indication in the record that Sample disregarded his oath.

Counsel was faced with two acceptable strategic options, and he did not err in consulting with his client to determine his preference. Even if this constituted error such that counsel's performance fell below an objective standard of reasonableness, petitioner cannot show that he suffered prejudice because Sample was not biased. At a minimum, the court cannot conclude that the PCR trial court's decision to deny relief on this claim was contrary to, or an unreasonable application of, clearly established federal law. As a result, following an independent review of the record, the court denies relief on the Petition.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#3) is DENIED. The court declines to issue a

---

[1] Not only did the Ninth Circuit deny relief in a case with more troublesome facts than those here, it did so on direct appeal where it was not bound by the significant constraints of the Anti-terrorism and Effective Death Penalty Act.

Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

    IT IS SO ORDERED.

    DATED this 12 day of January, 2010.

                                    Michael W. Mosman
                                    United States District Judge

12 - OPINION AND ORDER